


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRIAN G. HEYER )
    *Plaintiff* )
          ) Case No 19 CV 15
vs )
          )
EXPERIAN INFORMATION )
SOLUTIONS INC.; TRANS UNION )
LLC; EQUIFAX INC.; EQUIFAX ) Judge Griesbach
INFORMATION SERVICES LLC )
    *Defendants* )
          )
          ) **TRIAL BY JURY DEMANDED**
          )

## COMPLAINT FOR VIOLATIONS OF THE FCRA

### JURISDICTION

1. This court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C § 1331.

2. All conditions precedent to the bringing of this action have been performed.

### PARTIES

3. The Plaintiff in this lawsuit is Brian G. Heyer, a natural person, who resides in Outagamie County, Wisconsin.

4. Defendant Experian Information solutions Inc. (Experian) along with its subsidiaries, affiliates, and partners operates as a Consumer Reporting Agency regulated by the Fair Credit Reporting Act, (FCRA) 15 U.S.C. § 1681 *et seq.* and maintains corporate offices at 475 Anton Blvd., Costa Mesa, CA 92626.

5. Experian, its subsidiaries, and partners sell consumer information and data derived from consumer information in its consumer file(s) in a number of products and services to customers

such as offering their "Collection Triggers[SM][1]" service which operates on consumer data updated daily on an immense database of over 220 million consumers known as "File One[SM]" as just one example and generates hundreds of millions of dollars in revenue annually. Experian gathers massive amounts of consumer information on a daily basis as stated on their own web page[2] "Experian's U.S. ConsumerView marketing database covers over 300 million individuals and 126 million households. With the freshest data compiled from hundreds of public and proprietary sources, Experian has thousands of powerful data points to help marketers reach their targeting goals, including demographics, purchasing habits, lifestyles, interests and attitudes." Experian markets a product for businesses to target people for financial products using its financial data solutions stating "Experian's Financial and Wealth Audiences suite of solutions can help you accurately target consumers for financial services offerings using wealth indicator audiences, developed through our exclusive partnership with First Manhattan Consulting Group (FMCG Direct)." on that same web page.

6. Defendant Equifax Inc. (Equifax) along with its subsidiaries *operates* as a Consumer Reporting Agency ("CRA") regulated by the Fair Credit Reporting Act, (FCRA) 15 U.S.C. § 1681 *et seq.* with Equifax Inc. corporate offices at 1550 Peachtree Street, Atlanta, GA 30309.

7. Equifax Inc. is the parent of Equifax Information Services LLC (EIS). In prior litigation Equifax Inc. has taken the position it itself is not a "consumer reporting agency" governed by the FCRA. See 15 U.S.C. § 1681a(f) ("The term "consumer reporting agency" means any person, who for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other

---

[1] http://www.experian.com/consumer-information/debt-collection.html (last visited Dec. 21, 2018)

[2] https://www.experian.com/marketing-services/targeting/data-driven-marketing.html (last visited Dec. 21, 2018)

information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.")

8. But of course, Equifax Inc. *is* a consumer reporting agency. For purposes of the FCRA Equifax Inc. has held itself out repeatedly to consumers, regulators, and the public generally as the actual operating entity. The branding, labels, and disclosures on the Defendants' consumer website is dominated by "Equifax Inc." titling[3]. Defendants have held Equifax Inc. out as the operating and responsible entity, but argue in litigation that EIS is the consumer reporting agency, not Equifax Inc. How a company factually operates is what matters under the FCRA, not how it claims it operates.

9. United States Congress recognizes Equifax Inc. as a consumer reporting agency as evidenced by the many inquiries directed to Equifax Inc. – but not to its subsidiaries – regarding its consumer data practices. Equifax Inc. itself – but not its subsidiaries – has entered consent decrees with several States regarding its consumer data practices.[4] Last year, the Attorneys General of 43 States (including Wisconsin) directly raised to Equifax Inc., – but not its subsidiaries[5] – their profound concerns of Equifax Inc.'s consumer data practices.

10. Equifax Inc. and its subsidiaries such as Equifax Information Services LLC (EIS) and Equifax Consumer Services LLC (ECS) *operate* as *alter egos* of one another and freely transfer communications from consumers, as well as consumer information and data based on consumer information and communications, between the entities for commercial purposes without restriction and to treat them as separate entities would promote fraud and sanction injustice.

---

[3] https://www.equifax.com/personal/ (last visited on Dec. 21, 2018)

[4] https://www.dfs.ny.gov/about/ea/ea180627.pdf

[5] https://www.doj.state.wi.us/sites/default/files/news-media/9.25.17_equifaxlettertocounsel.pdf

11. Equifax Inc. and its subsidiaries including EIS *operate* using the same "Equifax" logo with no differentiation between entities when interacting with consumers via mail and otherwise. By virtue of different subsidiaries and divisions operating without any impediments of corporate structure using the same logo as Equifax Inc. an unsophisticated consumer would not know one Equifax entity from another.

12. Equifax Inc. has used EIS and ECS and other subsidiaries as dependent and integrated divisions rather than separate legal entities. The business operations are fully coordinated and shared resources are cross-applied without full and complete profit and cost centers. Management decisions at EIS and ECS as well as other divisions are made by and through Equifax Inc. And the entities largely hold themselves out as a single uniform business entity exchanging and selling consumer information as well as data derived from consumer information and communications it holds in its consumer files. Its customer base is vast, including state and federal governments, generating hundreds billions of dollars in revenue annually.

13. The FCRA, through a rule mandated at § 1681x expressly prohibits "a consumer reporting agency from circumventing or evading treatment as a nationwide consumer reporting agency" by means of corporate organization or restructuring.

14. Equifax Inc. and its subsidiaries – whether or not they observe state law corporate formalities – have eliminated nearly all lines between their different business entities in the collection, maintenance, sharing and furnishing of consumer reporting information. Equifax Inc. entities such as EIS regularly share FCRA restricted information with sibling ECS to market and profit from the sale of identity theft products including the blurring of legal lines between providing file information under the FCRA versus private sale to the consumer. It does so with a

number of Equifax related entities such as TALX Corporation, eThority, Anakam, Inc., not to mention Equifax Mortgage Services.

15. To remain separate and distinct for purposes of liability in this action, Defendants Equifax Inc. and Equifax Information Services LLC **must operate** as separate and legally as well as operationally distinct entities. Here for matters alleged and relevant herein, EIS is merely an *alter ego* of Equifax Inc. For purposes of how consumer data was handled, warehoused, used, and sold, the corporate lines were disregarded in practice. EIS, ECS, and other subsidiaries of Equifax Inc. are mere instrumentalities for the transaction of the corporate consumer credit business. Equifax Inc., EIS, ECS, and other subsidiaries share full unity of interest such that the separate personalities of the corporation and subsidiaries no longer exist as they operate as one consumer reporting agency under the FCRA.

16. Equifax Inc.'s then-CEO Richard F. Smith, in prepared testimony before Congress last year, did not distinguish between the errors of its subsidiaries. Instead he describes in his words — "as best I am able" — that "we at Equifax" collect "American consumer information," and he apologized to America "on behalf of the Board, the management team, and the company's employees." The records of the Georgia Secretary of State do not show that Mr. Smith was a Manager, Member, or Director of *Equifax Information Services LLC*. On behalf of which Board and thousands of employees was Mr. Smith apologizing for the shoddy protection of consumers' personal information, if not the operational octopus of Equifax Inc.?

17. Wisconsin Senator Bill Proxmire, who was Chair of the Senate Banking Committee and the champion of the FCRA, made clear that CRAs being required to provide consumers with full disclosure of their files was the *quid pro quo* for the CRAs' federal preemption from liability for

state defamation claims.[6] (One can barely imagine the joyful noise from the various Bar Associations should Equifax Inc. disclaim its CRA-status preemption protections.)

18. Defendant Trans Union LLC (Trans Union) along with its subsidiaries and affiliates operates as a Consumer Reporting Agency regulated by the Fair Credit Reporting Act, (FCRA) 15 U.S.C. § 1681 *et seq.* with corporate offices at 555 W. Adams Street Chicago, IL 60661. Trans Union operates as a single FCRA-governed consumer reporting agency. Trans Union LLC has structured itself in order to warehouse its sale of credit reporting consumer reports in one entity and its sale of criminal history, employment, landlord-tenant purposed, etc. consumer reports in other entities. However, it freely transfers data between units and operates without any impediments of corporate structure. In almost every material regard, the Trans Union units ***operate*** as if they are one and the same, a single consumer reporting agency.

## VENUE

19. The occurrences which give rise to this action occurred in Outagamie County, Wisconsin, and Plaintiff resides in Outagamie County, Wisconsin.

20. Venue is proper in the Eastern District of Wisconsin.

## GENERAL ALLEGATIONS

21. Plaintiff wanted to exercise his statutory right to receive his **full consumer file disclosure** of all information recorded and maintained in Defendants' files and/or databases about him. The statutory language of 15 U.S.C. § 1681g(a)(1) is clear:

> Every consumer reporting agency shall, upon request, and subject to § 1681h(a)(1) of this title, clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request.

---

[6] 115 Cong. Rec. 33,411 (1969) ("That is the quid pro quo.") (remarks of Sen. Proxmire)

Plaintiff looked at the annualcreditreport.com website which was set up and is operated by the Defendants but could find no place on that website where he could request his **full consumer file disclosure.** Instead he found only where he could request a "credit report" which is NOT what he wanted or what § 1681g(a)(1) states he is entitled to upon request as a consumer. Plaintiff then decided to write to each of the Defendants directly and **made a very deliberate and specific request to obtain his full consumer file disclosure** which he is entitled to under 15 U.S.C. § 1681g(a)(1), **NOT** just a conventional credit report.

22. Plaintiff made a written request sent by certified mail for a copy of his **full consumer file disclosure** which was received by Experian on September 22, 2017. See Exhibit 1 attached.

23. In response to his very specific request for his **full consumer file disclosure** Plaintiff received a version of his Experian credit report, which was not responsive to his request.

24. Plaintiff made a written request sent by certified mail for a copy of his **full consumer file disclosure** which was received by Equifax on September 21, 2017 See Exhibit 1 attached..

25. In response to his very specific request for his **full consumer file disclosure** Plaintiff received a copy of his Equifax credit report, which was not responsive to his request.

26. Plaintiff made a written request sent by certified mail for a copy of his **full consumer file disclosure** which was received by Trans Union on September 21, 2017. See Exhibit 1 attached.

27. In response to his very specific request for his **full consumer file disclosure** Plaintiff received a letter from Trans Union which was not responsive to his request. That letter incorrectly asserted that a "credit report" had been requested, while also speciously denying that Plaintiff's mailing address was in Trans Union's records. Plaintiff's request had included a copy of both his Social Security card and his REAL-ID compliant Wisconsin driver's license. See Exhibit 1 attached.

28. Plaintiff, in making the same request of each of the Defendants, specified in great detail exactly which specific sections of the Fair Credit Reporting Act (FCRA) requires each Defendant to provide a **full consumer file disclosure** at least once every 12 months at no charge when a request is made by a consumer. See Exhibit 1 attached.

29. Plaintiff's request for a **full consumer file disclosure** from each Defendant was his first request for a **full consumer file disclosure** within 12 months and identification in the form of a legible copy of both his Social Security card and his REAL-ID compliant Wisconsin driver's license were attached to the request for identification and location purposes.

30. After receiving a response from each Defendant that did not comply with the request made, Plaintiff made a second written request for a **full consumer file disclosure** pursuant to the FCRA of each Defendant. See Exhibit 2 attached. To create a paper trail which would be easy for a human to follow, the second request included a copy of the first letter which had been sent to that Defendant, as well as a legible copy of both his Social Security card and his REAL-ID compliant Wisconsin driver's license for identification. See Exhibit 2 attached.

31. At no time did Plaintiff make any request for a "credit report" or "credit file" from the Defendants but instead was very specific in requesting a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(1) as outlined in the initial request. See Exhibit 1.

32. In response to Plaintiff's second request for a **full consumer file disclosure** to Experian he received a credit report, which again failed to be responsive to his request as required by 15 U.S.C. § 1681g(a)(1).

33. In response to Plaintiff's second request for a **full consumer file disclosure** to Equifax he received a credit report, which again failed to be responsive to his request as required by 15 U.S.C. § 1681g(a)(1).

34. In response to Plaintiff's second request for a **full consumer file disclosure** to Trans Union he received a letter, which again failed to be responsive to his request as required by 15 U.S.C. § 1681g(a)(1).

35. After receiving Trans Union's reply which was not responsive to his second request, Plaintiff made a **third** request for a full consumer file disclosure. See Exhibit 3.

36. In response to Plaintiff's third request to Trans Union for a full consumer file disclosure, he received a Trans Union credit report, which was not responsive to his request as required by 15 U.S.C. § 1681g(a)(1).

37. All documents provided to Defendants in relation to identity and location information were in clearly legible form and in compliance with 15 U.S.C. § 1681h.

38. 15 U.S.C. § 1681g(a)(1) requires that ALL information in the possession of a CRA at the time of a consumer's proper request be disclosed in response to that request. Nowhere in §1681g does the statute limit that information to the scope of credit or credit related data which may be included in a conventional credit report. The statute clearly states ALL information regardless of its nature must be provided other than clearly ancillary information excluded by §1681g(1)(B) which Plaintiff clearly did NOT request.

39. In each case with each Defendant there was only communication in the form of letters requesting Plaintiff's **full consumer file disclosure** and response(s) by each Defendant with no other party involved in the communications between the parties other than the United States Postal Service (USPS) which transported documents between the parties.

40. Plaintiff was well aware of the then-recent hack of the Equifax database publicized in 2017. Based on his study of consumer protection statutes such as the FCRA, he had reason to believe that more information than he had ever received in past conventional "credit reports" had

been stolen. He had been studying the FCRA prior to the hack and already realized there was substantial information that companies like Equifax, Experian, and Trans Union had in their files about consumers than had been included in a conventional credit report he had received previously. Plaintiff had no direct knowledge of specific information regarding himself that might be in Defendants' file(s). That information, if it existed, could only be obtained through requesting a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(1) rather than asking for a conventional credit report as he had in the past either through annualcreditreport.com or directly from the Defendants.

41. Plaintiff did NOT request a "credit report," credit disclosure, or anything else using the words "credit" or "report" in any manner from any Defendant at any time related to this lawsuit but instead made a request for his **full consumer file disclosure** and nothing else. To use file cabinets as an analogy, Plaintiff seeks under the statute the disclosure of the contents of all the files regarding him, regardless of which office building or which subsidiary has to check their file cabinets. Continuing the analogy, Plaintiff is not concerned with the color of the file folders, knowing which clerk updates the index of files, or other such ancillary data. Plaintiff is not concerned with receiving a cherry-picked summary of limited credit-related information which Defendants might refer to as a "credit report." Plaintiff is entitled to all the information in the file cabinet regarding him.

> "Every consumer reporting agency shall, upon request, and subject to § 1681h(a)(1) of this title, clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request..." 15 U.S.C. § 1681g(a)(1).

42. Upon information and belief, there is substantial information relating to the Plaintiff that is contained in all Defendants' files that has not been disclosed to him including, but not limited to, information that was previously shown in his credit reports that is now archived in addition to

information that is provided to prospective creditors, insurers, or employers who request information on Plaintiff that he has never seen or has been made aware of.

43. Upon information and belief, the information that is not disclosed to Plaintiff may contain negative codes or erroneous account information, among other things, that is provided to prospective creditors, insurers, or employers which directly affect how that prospective creditor, insurer, or employer would view the Plaintiff in terms of granting credit, rating insurance policies, or providing employment or housing.

44. This undisclosed information has never been provided to Plaintiff even when it was requested so he could examine it for accuracy and dispute it if necessary. It could be blatantly false or at the least misleading and without disclosure by the Defendants Plaintiff would not have the opportunity to dispute the accuracy or veracity of the information in Defendants' files which he is legally entitled to do under the FCRA. Disclosure of false or misleading information to prospective creditors, insurers or employers that Plaintiff knows nothing about could paint him in a false light where he could be denied credit, housing, employment or pay higher interest rates on credit if it was granted and higher premiums for insurance harming him substantially.

45. Upon information and belief, Defendants have far more information relating to Plaintiff in their file(s) and/or database(s) including archived information beyond that which Plaintiff has ever had access to or had the opportunity to review for accuracy and is provided to others when they make a request for consumer information related to him. This information has been properly requested by Plaintiff multiple times and is required to be disclosed under 15 U.S.C. § 1681g(a)(1) when a proper request is made by a consumer. Every consumer reporting agency shall, upon request, and subject to § 1681h(a)(1) of this title, clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request. 15 U.S.C. §

1681g(a)(1) The Defendants have **repeatedly refused** to provide Plaintiff with his **full consumer file disclosure** after multiple requests. Plaintiff's requests were very specific in nature so as not to be misconstrued as a request for a credit report or credit disclosure by Defendants.

46. Plaintiff never made any request of Defendants that used the words "credit" or "report" in any manner or context but made a straightforward and very clear request **ONLY** for a **full consumer file disclosure** [Exhibits 1 and 2] to which he is entitled under 15 U.S.C. § 1681g(a)(1) and all Defendants failed to provide his **full consumer file disclosure** as required by the FCRA.

47. Plaintiff clearly is not making any claim regarding information that **HAS** been provided to a third party that he is aware of. The sole issue in this lawsuit revolves around the fact that he has not had access to ALL information in his **full consumer file** that may have been at some time in the past provided to an unknown third party or **MIGHT** be provided at some time in the future to a third party and he is entitled to have access to by law to review for accuracy.

48. Plaintiff made no requests for information such as credit scores, default dates, predictors or other ancillary information related to how the Defendants hold and/or manage the consumer information they have in their file(s) on individual consumers. The ONLY information requested by Plaintiff was a **full consumer file disclosure** of information *directly* related to him as a consumer that affects his credit worthiness, credit standing and credit capacity but also general reputation, personal characteristics, or mode of living among other things.

49. Because Plaintiff has not had access to that undisclosed information he has therefore had no opportunity to review it and dispute the accuracy of it if it is false yet it is provided to

Case 1:19-cv-00015-WCG   Filed 01/02/19   Page 12 of 15   Document 1
Page 12 of 15

potential creditors, housing providers, insurers and employers without his knowledge and purposely and illegally concealed from him.

50. Upon information and belief, when a report is provided by the Defendants to a potential creditor, insurer or employer that information is provided in an encrypted format with instructions to the user that the consumer is NOT to be shown that information. There is no prohibition in the law that information obtained by a user can be provided to the consumer if a request for it is made by the consumer yet instructions from the Defendants are to the contrary. Why?

51. One can only surmise that there must be some nefarious reason why that information should not be provided to the consumer that is sent to the user in an encrypted format with instructions to the user to conceal it from the consumer. A reasonable assumption would be that it contains information that the consumer has never seen and the consumer reporting agencies don't want the consumer to see for some unknown reason. This is obviously not in concert with the mandate of full disclosure clearly articulated in the FCRA in unambiguous plain language.

52. Plaintiff made multiple specific written requests of each of the Defendants for a **full consumer file disclosure** to which he is entitled as clearly stated in 15 U.S.C. § 1681g(a)(1) and all Defendants have failed to provide his **full consumer file disclosure** to Plaintiff and are therefore in violation of the FCRA.

53. The claims made in this lawsuit are in NO manner related to the data breach that occurred with Equifax. The claims herein are entirely focused on the very simple premise that all Defendants failed to provide a **full consumer file disclosure** of all information in their files to Plaintiff upon his multiple requests as required by 15 U.S.C. § 1681g(a)(1). There is no relation of any claims made herein to any issues with the Equifax data breach.

54. The actions of all Defendants occurred within the past two years and are within the Statute of Limitations under the FCRA.

## COUNT I

## VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681, WILLFUL NON-COMPLIANCE BY DEFENDANT EXPERIAN INFORMATION SOLUTIONS INC.

55. Paragraphs 1 through 54 are re-alleged as though fully set forth herein.

56. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

57. Experian operates as a consumer reporting agency within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

58. Experian repeatedly failed to comply with Plaintiff's multiple requests for a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(1).

WHEREFORE, Plaintiff demands judgment for damages against Experian for statutory damages of $1,000.00, any attorney's fees, and all costs pursuant to 15 U.S.C. § 1681n.

## COUNT II

## VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681, WILLFUL NON-COMPLIANCE BY DEFENDANT TRANS UNION LLC

59. Paragraphs 1 through 54 are re-alleged as though fully set forth herein.

60. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

61. Trans Union operates as a consumer reporting agency within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

62. Trans Union repeatedly failed to comply with Plaintiff's multiple requests for a **full consumer file disclosure** pursuant to 15 U.S.C. § 1681g(a)(1).

WHEREFORE, Plaintiff demands judgment for damages against Trans Union for statutory damages of $1,000.00, any attorney's fees, and all costs pursuant to 15 U.S.C. § 1681n.

## COUNT III

## VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681, WILLFUL NON-COMPLIANCE BY DEFENDANTS EQUIFAX INC. AND EQUIFAX INFORMATION SERVICES LLC

63. Paragraphs 1 through 54 are re-alleged as though fully set forth herein.

64. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

65. Equifax and its alter ego Equifax Information Services LLC operate as a consumer reporting agency within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

66. Equifax and Equifax Information Services LLC repeatedly failed to comply with Plaintiff's multiple requests for a full consumer file disclosure pursuant to 15 U.S.C. § 1681g(a)(1).

WHEREFORE, Plaintiff demands judgment for damages against Equifax Inc. and Equifax Information Services LLC for statutory damages of $1,000.00 each, any attorney's fees, and all costs pursuant to 15 U.S.C. § 1681n.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Respectfully Submitted,

Brian G. Heyer
W6786 Sunnyvale Ln
Greenville, Wisc. 54942-8695
(920) 710-0171