# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# GREEN BAY DIVISION

BRIAN G. HEYER

    Plaintiff,

                                              Case No. 1:19-cv-00015-WCG

v.

EXPERIAN INFORMATION SOLUTIONS,
INC., et al.,

    Defendants.

## DEFENDANTS EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX, INC., AND EQUIFAX INFORMATION SERVICES, LLC'S MEMORANDUM IN SUPPORT OF JOINT MOTION TO DISMISS COMPLAINT

Defendants Experian Information Solutions, Inc. ("Experian"), Equifax, Inc., and Equifax Information Services, LLC ("EIS" and, together with Equifax, Inc., "Equifax"), file their Memorandum in Support of their Motion to Dismiss Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and ask the Court to dismiss this action with prejudice in its entirety. For the reasons stated below, the motion should be granted.

## INTRODUCTION

Plaintiff Brian Heyer has filed a Complaint under 15 U.S.C. § 1681g of the Fair Credit Reporting Act that tracks complaints recently filed by several *pro se* litigants across the country. The gist of each is the same: Experian and Equifax (collectively, "Defendants") willfully violated § 1681g(a)(1) because they failed to provide Plaintiff with all the information maintained in their files about him. There are at least three fatal flaws in this theory of liability.

*First*, the Complaint does not plausibly allege that Defendants denied Plaintiff information, or that such information even exists. Plaintiff only alleges that unknown information "may" have been or "might" be provided by Defendants to a third party. As at least

two courts confronted with identical allegations have concluded, the allegation that Defendants *may* have as-yet-undisclosed information in their files is too speculative to survive a motion to dismiss.

*Second*, even taking Plaintiff's conclusory allegations as true, nothing in the Complaint shows that Defendants "willfully" violated the FCRA, as Plaintiff is obligated to prove. The Complaint identifies only two pieces of concrete information that, upon information and belief, Plaintiff contends was withheld from him: "archived information" that is no longer included on his reports, and "negative codes" used to communicate with credit grantors. To prove that Defendants willfully violated the FCRA, Plaintiff must point to some authority clearly establishing that § 1681g reaches that kind of information. In fact, however, the case law is to the contrary. That case law would warrant dismissal even in a case under the FCRA's negligence standard, even though Plaintiff has not pled negligence; at the least, it powerfully refutes Plaintiff's contention that Defendants were objectively unreasonable when they responded to his request for information by providing his consumer disclosure.

*Third*, Plaintiff lacks standing to sue because the Complaint does not identify a concrete harm. A plaintiff alleging denial of information under the FCRA must show the denial created a real harm with an adverse effect. Plaintiff does not allege that Defendants have denied him information they have provided to credit grantors, potential employers, and the like, or that Defendants even intend to do so. At most, Plaintiff alleges a technical violation of the FCRA with no real-world consequences. Under Article III, the abstract risk that third parties might obtain unspecified inaccurate or misleading information at some undefined point in the future does not a case or controversy make.

**I.    FACTUAL ALLEGATIONS**

In his Complaint, Plaintiff states one cause of action against each defendant for willful non-compliance under § 1681g(a)(1), which provides that a consumer reporting agency shall, upon request, clearly and accurately disclose to the consumer "[a]ll information in the consumer's file at the time of the request…." *See* Dkt. 1 ¶¶ 55-65.

Plaintiff alleges that he made a written request to each defendant for his "full consumer file disclosure" in September 2017. *See id.* ¶¶ 22, 24, 26 & Ex. 1. He alleges that, in response, he received a "credit report" from Experian and Equifax, which was not responsive to his request.[1] *Id.* ¶¶ 23, 25. Subsequently, Plaintiff allegedly made a second request to each defendant for a "full consumer file disclosure." *Id.* ¶¶ 30, 31 & Ex. 2. Plaintiff alleges that, again, he received a "credit report" from Experian and Equifax, which was not responsive to his request. *Id.* ¶¶ 32, 33.

The Complaint alleges, upon information and belief, that there is information relating to Plaintiff contained in Defendants' files that has not been disclosed to him, including previous

---

[1] Plaintiff's allegations confuse the terms by which various statements are known under the FCRA. A "consumer *report*" or "credit *report*" is different from a "consumer *disclosure*." *See Pettway v. Equifax Info. Servs., LLC*, No. CIV.A. 08-0618-KD-M, 2010 WL 653708 (S.D. Ala. Feb. 17, 2010). Consumer *reports* are generated by a CRA and delivered to a third party such as an employer, insurer, or lender for use in deciding whether the consumer is eligible for credit or other purposes. *See id.* A consumer *disclosure* is the CRA's file which it provides to the consumer, not third parties, that contains information about the consumer recorded and retained by the CRA. *Id.* "Reports prepared solely for the consumer do not constitute 'consumer reports' under the FCRA." *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 645 (S.D. Ala. 2007); *see Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 755, n.3 (9th Cir. 2018) ("A consumer, or credit, report is a CRA-prepared report that a CRA issues to third parties for certain qualifying purposes.").

Plaintiff's allegation that he received a credit report, instead of a full consumer file disclosure, is thus nonsensical. *See* Dkt. 1 ¶¶ 23, 25, 32, 33, 36. Plaintiff indisputably received a consumer disclosure from each defendant. The only relevant question is whether Plaintiff has plausibly

3
Case 1:19-cv-00015-WCG   Filed 03/11/19   Page 3 of 16   Document 17

information that is now "archived" and unspecified "additional information that is provided to prospective creditors, insurers or employers…." *Id.* ¶ 42. Plaintiff stresses that he "is not making any claim regarding information that **HAS** been provided to a third party," only that certain information "may have been" provided to a third party or "**MIGHT** be provided at some time in the future…." *Id.* ¶ 47 (emphasis in original).

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' ... Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## III.   ARGUMENT

### A.   The Complaint Fails to State a Plausible Claim for Relief.

Defendants' motion to dismiss should be granted, first, because the Complaint does not plausibly allege a violation of § 1681g. Without any factual allegation to support Plaintiff's

---

alleged that he did not receive a consumer disclosure containing all the information required by § 1681g(a)(1).

assumption that Defendants have withheld information him, the Complaint does not cross the line from possibility to plausibility.

To survive a motion to dismiss, a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570. The complaint thus must establish "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Applying *Iqbal* and *Twombly*, courts have held that it is not enough for a complaint "to assume that some data was withheld from [the plaintiff], without any factual allegations in support of that assumption." *Larson v. Trans Union, LLC*, No. 12-CV-05726-WHO, 2014 WL 1477705, at *4 (N.D. Cal. Apr. 14, 2014). Lacking any factual support, the mere allegation that a credit reporting agency "may" or "might" possess more information about a consumer than it has disclosed "stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

Nor may a plaintiff surmise that a consumer reporting agency has failed to disclose information and then use discovery to attempt to prove up that assumption. "The 'doors' of discovery are not 'unlocked' for 'a plaintiff armed with nothing more than conclusions.'" *Parker v. Equifax Info. Servs., LLC*, No. 2:15-CV-14365, 2017 WL 4003437, at *4 (E.D. Mich. Sept. 12, 2017) (quoting *Iqbal*, 556 U.S. at 678-79). The pleading standards established by *Iqbal* and *Twombly* do not permit a plaintiff to file suit based on assumptions, in the hopes that factual support will come later through discovery. *Id.*

Here, the Complaint alleges, upon information and belief, that Defendants failed to disclose three pieces of information in their files:

1. "[A]rchived" information "that was previously shown in [Plaintiff's] credit reports" (Dkt. 1 ¶ 42);

2. Unidentified additional or "erroneous account" information that is provided to prospective creditors, insurers or employers" (*id.* ¶¶ 42, 43); and

3. "[N]egative codes" that are provided to prospective creditors, insurers or employers (*id.* ¶ 43).

Courts confronted with ***identical allegations*** have held that they are too speculative to survive a motion to dismiss. *See Scott v. Experian Info. Sols., Inc.*, No. 18-cv-6078, 2018 WL 3360754, at *6-7 (S.D. Fla. June 29, 2018); *Frazier v. Experian Info. Sols., Inc.*, No. CV JKB-18-0067, 2018 WL 3785131, at *6 (D. Md. Aug. 9, 2018). As in those cases, Plaintiff admits he has no direct knowledge of the content of Defendants' files (Dkt. 1 ¶ 40), and "can only postulate as to what should have been included in the disclosures." *Frazier*, 2018 WL 3785131, at *6. And, as in those cases, "Plaintiff does not point to what information is actually missing from what he received from Defendants or what specific facts lead him to accuse Defendants of failing to meet their disclosure requirements under the FCRA"; indeed, Plaintiff admits he is not "making any claim regarding information that HAS been provided to a third party." *Scott*, 2018 WL 3360754, at *7; *see* Dkt. 1 ¶ 47.

Plaintiff's theory is based, on his own admission, on nothing more than "surmise." Dkt. 1 ¶ 51. But mere surmise does not amount to plausibility, and the Complaint accordingly does not pass muster under *Iqbal* and *Twombly*. *Scott*, 2018 WL 3360754, at *7; *Frazier*, 2018 WL 3785131, at *6.

**B.     The Complaint Does Not Allege Any Facts Supporting The Claim That Defendants Willfully Violated the Fair Credit Reporting Act.**

Even if Plaintiff's allegations were plausible, Defendants' motion to dismiss should be granted because the allegations in the Complaint—even when accepted as true—do not amount to a willful violation of the FCRA.

### 1. Under the FCRA, Willfulness is a High Standard that Requires a Knowing or Reckless Violation.

Plaintiffs suing under the FCRA may allege either a negligent or willful violation of the statute. 15 U.S.C. §§ 1681n (willfulness provision), 1681o (negligence provision). To maintain a claim for negligent violation of the FCRA, however, the plaintiff must establish actual damage—an element the Complaint does not allege. *See* 15 U.S.C. § 1681o(a)(1). Because Plaintiff has elected to proceed exclusively under the theory that Defendants willfully violated the FCRA, the Complaint must allege facts meeting this heightened standard.

"[W]illfulness is a high standard, requiring knowing or reckless disregard of the FCRA's requirements." *Berry v. Schulman*, 807 F.3d 600, 605 (4th Cir. 2015). In *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), the Supreme Court analogized the FCRA's willfulness standard to the "clearly established" requirement in qualified immunity cases, reasoning that an FCRA violation can only be willful if the defendant engages in conduct that is clearly unlawful under then-existing law. *Id.* at 69-70. *Safeco* itself makes clear that this "clearly established" test sets a very high bar for willfulness liability: even federal district court case law and informal agency guidance do not suffice to make an FCRA interpretation "clearly established" under *Safeco*; rather, only "court of appeals" authority, "authoritative guidance" from the Federal Trade Commission, or statutory language that is "pellucid" satisfy this test. *Id.* Accordingly, unless the defendant's alleged conduct would not have been lawful under any interpretation of the FCRA that "could reasonably have found support in the courts," the willfulness claim must fail. *Id.* at 70 n.20.

This standard thus protects misreadings of the FCRA so long as they are "objectively reasonable," much in the same way that qualified immunity protects officials from liability if their "action[s] w[ere] reasonable in light of legal rules that were 'clearly established' at the

time." *Safeco*, 551 U.S. at 70 (citing and describing *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). And there are "numerous … cases in which courts have applied *Safeco* and declined to hold defendants liable absent evidence of a reckless approach to FCRA compliance." *Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 254 (3d Cir. 2012).

### 2. Plaintiff's Allegations Do Not Rise to the Level of a Knowing or Reckless Violation Because They Do Not Allege a Violation at All.

The allegations in the Complaint do not come close to establishing that Defendants violated "pellucid" guidance from the appellate courts and FTC. Indeed, the most relevant guidance from appellate courts and the FTC is *contrary* to the theory of liability alleged in Plaintiff's complaint.

According to the Complaint, Defendants maintain three pieces of information that they failed to disclose to Plaintiff upon his request for a consumer file disclosure: (1) archived information; (2) negative codes; and (3) unspecified additional or erroneous information. The premise of Plaintiff's complaint is that so long as a consumer reporting agency maintains *any* form of information on the consumer that it fails to disclose upon request, a violation of § 1681g(a)(1) is stated. Notably, however, every federal circuit to consider Plaintiff's argument— *i.e.*, that the term "file" includes all information on the consumer recorded and retained by a CRA—has rejected it. *See, e.g.*, *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007); *Shaw v. Experian Info. Solutions, Inc.*, 891 F.3d 749, 761 (9th Cir. 2018); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711 (3d Cir. 2010).

In *Gillespie*, the plaintiff alleged that a consumer reporting agency violated § 1681g(a)(1) by providing her with a consumer file disclosure that revealed delinquent account information but omitted any mention of the purge date. 482 F.3d at 908. Trans Union maintained this purge

date—*i.e.*, the date when negative information is to be removed issued reports—in its files, but did not include this information on the consumer reports it sends to third parties. *Id.*

The plaintiff argued that because § 1681g(a)(1) states that a consumer reporting agency must disclose "*[a]ll* information in the consumer's file," the statute requires disclosure of everything in the consumer's file, and not just material included in a consumer report issued to third parties. *Id.* The Seventh Circuit disagreed, for several reasons.

First, while § 1681g(a)(1) requires CRAs to disclose all information in the consumer's file, subsequent paragraphs in § 1681g(a) "list other types of information that must be revealed as well," including the name of each person that received a consumer report, and a record of all credit inquiries during the one-year period before the consumer's request. *Id.* at 909. If § 1681g(a)(1) required disclosure of all information on the consumer recorded and retained by a CRA, "then these additional paragraphs are unnecessary." *Id.*

Second, the FTC's commentary on § 1681g(a)(1) limits the scope of the provision to material included in a consumer report, *i.e.*, the report generated and delivered to third parties for use in deciding whether the consumer is eligible for credit or other purposes. *Id.* (citing 16 C.F.R. pt. 600, app. § 603 ("The term 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer.").[2]

Third, legislative history underlying § 1681g(a)(1) indicates that Congress enacted the statute to ensure that consumers receive "complete copies of their consumer reports, not their

---

[2] In 2010, Congress transferred authority for the interpretation of the FCRA from the FTC to the Consumer Financial Protection Bureau ("CFPB"). See Dodd- Frank Wall Street Reform & Consumer Protection Act, Pub. L. No. 111-203 § 1088, 124 Stat. 1376. But the CFPB has not issued any contrary interpretation, and the existence of the FTC's commentary bears on whether Defendants willfully violated the FCRA.

entire files in whatever form maintained by the CRA." *Id.* (citing S. Rep. No. 104-185, at 41 (1995) ("Section 408 explicitly requires consumer reporting agencies to provide, upon request, all information in the consumer's file. The Committee intends this language to ensure that a consumer will receive a copy of that consumer's report, rather than a summary of the information contained therein.")).

Based on the foregoing, the Seventh Circuit held that § 1681g(a)(1) requires CRAs to disclose "information included in a consumer report." *Id.* at 910. Thus, unless the plaintiff makes "some showing" that the CRA has failed to disclose information contained in a consumer report, a claim under § 1681g(a)(1) fails. *Id.* at 909; *see also* Dee Pridgen & Richard M. Alderman, *Consumer Credit & the Law* § 2:16 (Nov. 2017) ("[T]he FCRA does not require consumer reporting agencies to disclose information that is not given to creditors who request credit reports.").

The allegations in the Complaint do not plausibly allege that Defendants knowingly or recklessly violated any of this guidance. Plaintiff complains that Defendants' disclosures did not include "archived" information that is now excluded from his consumer reports. Dkt. 1 ¶ 42. But § 1681g(a)(1) expressly limits a CRA's disclosure to information in the consumer's file—*i.e.*, information included in a consumer report, *Gillespie*, 482 F.3d at 910—"at the time of the request." If Defendants archived information that is no longer included on the consumer reports they issue to third parties, Defendants have no obligation under § 1681g (a)(1) to disclose such information.

Plaintiff also complains that his disclosure did not include "negative codes." Dkt. 1 ¶ 43. Plaintiff does not explain what he means by "negative codes," but his claim appears to turn on the different way that credit reports (provided to subscribers, like potential creditors) and

consumer disclosures (provided to consumers) are reported. Most credit reports go to credit grantors, "who read the information with computers"; accordingly, the information is "delivered in a computer-generated format 'in segments and bits and bytes.'" *Shaw v. Experian Info. Sols., Inc.*, No. 13-CV-1295 JLS (BLM), 2016 WL 5464543, at *2 (S.D. Cal. Sept. 28, 2016), *aff'd*, 891 F.3d 749 (9th Cir. 2018). "Although this output is easily read by the computers of credit grantors ..., it is essentially incomprehensible to human beings." *Id.* "Unlike a credit report, which contains industry codes and fields which are designed to be read by computers and which would be unfamiliar and meaningless to a lay consumer, the consumer disclosure uses a more elementary and easy-to-read format to convey the same information." *Id.* at *3.

Plaintiff does not allege that Defendants are reporting "negative codes" to credit grantors without disclosing the same information in a comprehensible way on the disclosure he received; instead, Plaintiff appears to believe that § 1681g(a)(1) requires CRAs to disclose to consumers *both* the digital codes used to communicate with credit grantors' computers *and* the same information in a format that human readers can understand. Again, however, not only is there a lack of "pellucid" authority supporting Plaintiff's position, there is case law directly to the contrary. *See Shaw*, 891 F.3d at 761. This precedent makes ample sense: it would be detrimental to consumers to be provided with reports containing codes and data intended for computers, instead of simple language describing the same information.

Finally, Plaintiff vaguely alleges that Defendants disclosed a consumer report lacking unspecified additional or "erroneous account" information that is provided to prospective creditors, insurers or employers." Dkt. 1 ¶¶ 42, 43. It is not plausible that Defendants knowingly or recklessly violated § 1681g when Plaintiff cannot even identify the content or form of

11
Case 1:19-cv-00015-WCG   Filed 03/11/19   Page 11 of 16   Document 17

information Defendants failed to disclose. Put simply, a plaintiff cannot satisfy the high bar of willfulness with such vague allegations.

### C. Plaintiff Lacks Standing Because the Complaint Does Not Allege a Concrete Injury.

Finally, the Court should grant Defendants' motion to dismiss because the Complaint alleges a technical statutory violation that, by Plaintiff's own admission, has caused no real-world harm. As the Supreme Court has made clear, Article III standing requires *real* harm. *See Spokeo v. Robins*, 136 S. Ct. 1540 (2016). The required Article III injury is lacking here, because there is no factual allegation suggesting that Plaintiff has been affected even slightly by the alleged violation. This case is the epitome of the sort of no-injury claim that *Spokeo* forbids federal courts from entertaining.

To satisfy Article III's standing requirement, the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo*, 136 S. Ct. at 1547. To establish injury in fact, a plaintiff must show that he suffered an invasion of a legally-protected interest that is both concrete and particularized. *Id.* at 1548. For an injury to be concrete, "it must actually exist" and be "real, and not abstract." *Id.* Notably, a plaintiff cannot automatically satisfy the injury in fact requirement just because "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. Put another way, one cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement." *Id.*

The Fourth Circuit applied *Spokeo* to a claim under § 1681g—the same FCRA provision at issue here—in *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337 (4th Cir. 2017). The plaintiff in *Dreher* complained that although Experian disclosed certain information in his file, Experian

failed to disclose the information's source, as § 1681g requires. *See* 856 F.3d at 345. The Fourth Circuit acknowledged that this type of informational injury *can* constitute an Article III injury-in-fact, but does not unless the plaintiff lacks "access to information to which he is legally entitled *and* … the denial of that information creates a 'real' harm with an adverse effect." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549).

To determine whether the plaintiff in *Dreher* alleged a concrete injury, the Fourth Circuit first examined whether the plaintiff alleged an injury of the type that has "'traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" 836 F.3d at 345 (quoting *Spokeo*, 136 S. Ct. at 1549). Finding none, the Fourth Circuit held that an informational injury under the FCRA is concrete only when the plaintiff is denied access to information required to be disclosed by statute, "*and* he 'suffers, by being denied access to that information, the type of harm *Congress sought to prevent* by requiring disclosure.'" *Id.* at 345- 46 (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016) (emphasis in original)). Because the FCRA is intended to ensure fair and accurate credit reporting, a plaintiff alleging informational injury must show that the alleged violation made a difference in the fairness or accuracy in his credit report—a showing the plaintiff in *Dreher* failed to make. *Id.* at 346.

In the Seventh Circuit, the case law regarding the FCRA appears to be in accord with *Dreher*; a constitutionally cognizable informational injury requires that the plaintiff lack information to which he is legally entitled *and* that the denial of that information creates a real harm with an adverse effect. *Compare Robertson v. Allied Sols., LLC*, 902 F.3d 690, 694 (7th Cir. 2018) and *Groshek v. Great Lakes Higher Education Corp.*, 865 F.3d 884 (7th Cir. 2017). In *Robertson*, the court held that withholding information when a statute requires its publication—sometimes called an "informational injury"—***may*** inflict concrete personal harm. 902 F.3d at

13
Case 1:19-cv-00015-WCG   Filed 03/11/19   Page 13 of 16   Document 17

694. "An informational injury is concrete if the plaintiff establishes that concealing information impaired her ability to use it for a substantive purpose that the statute envisioned." *Id.* In *Groshek*, the Seventh Circuit held that the plaintiff lacked Article III standing for an alleged informational injury under the FCRA, and held that while "'Congress is well positioned to identify intangible harms that will give rise to concrete injuries, which were previously inadequate in law,'" "'Congress' judgment that there should be a legal remedy for the violation of a statute does not mean each statutory violation creates an Article III injury.'" 865 F.3d at 887 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), and *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016)).

Plaintiff, however, has failed to allege that he has suffered any "real" harm in the form of an inaccurate or unfair credit report. Indeed, Plaintiff does not even claim that the unspecified information he seeks has been provided to any third party in a credit report. He expressly denies that it has. Dkt. 1 ¶ 47.

The Complaint alleges nothing more than a purported procedural violation under the FCRA. Any harm flowing from that purported violation is entirely abstract. Article III does not permit a plaintiff to sue because he surmises that some injury *might* occur at some point in the undefined future. Unless and until Plaintiff can plausibly allege that Defendants' alleged violation of § 1681g has resulted in unfair or inaccurate credit reporting, his complaint does not meet the "irreducible constitutional minimum" of a "case" or "controversy," and must be dismissed for lack of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

## **CONCLUSION**

Defendants Experian and Equifax respectfully request that this Honorable Court dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) and for such other relief as the Court deems necessary.

Dated: March 8, 2019 

Respectfully submitted,

*/s/ Marie G Bahoora*
Marie G Bahoora
Michael Best & Friedrich LLP
100 E Wisconsin Ave - Ste 3300
Milwaukee, WI 53202-4108
414-271-6560
Fax: 414-277-0656
Email: mgbahoora@michaelbest.com

*Attorneys for Experian Information Solutions Inc*

Dated: March 11, 2019

Respectfully submitted,

*/s/Meryl W. Roper*
Meryl W. Roper
King & Spalding LLP
1180 Peachtree Street NE
Atlanta, GA 30309
(404) 572-4600 (tel)
(404) 572-5100 (fax)
mroper@kslaw.com

*Attorneys for Equifax Information Services LLC and Equifax Inc.*

# **CERTIFICATE OF SERVICE**

This is to certify that I have this day electronically filed a true and correct copy of the foregoing document by ECF, which will send notification of such filing to the following attorneys of record:

Marie G Bahoora
Michael Best & Friedrich LLP
100 E Wisconsin Ave - Ste 3300
Milwaukee, WI 53202-4108

Michelle L Dama
Michael Best & Friedrich LLP
Firstar Plaza
1 S Pinckney St - Ste 700
PO Box 1806
Madison, WI 53701-1806

J Robert Weyreter
Justin T Walton
Katherine E Carlton Robinson
Schuckit & Associates PC
4545 Northwestern Dr
Zionsville, IN 46077

And via U.S. Mail to:

Brian G Heyer
W6786 Sunnyvale Ln
Greenville, WI 54942-8695


Dated: March 11th, 2019

    KING & SPALDING LLP

    */s/ Meryl W. Roper*
    Meryl W. Roper
    *Attorney for Defendant Equifax Information Services LLC*