| | |
|---|---|
| Brian G. Heyer<br>    *Plaintiff.*<br><br>v.<br><br>EXPERIAN INFORMATION<br>SOLUTIONS, INC.; TRANS UNION<br>LLC; EQUIFAX, INC.; EQUIFAX<br>INFORMATION SERVICES LLC<br>    *Defendants* | Case No. 1:19-cv-00015-WCG<br><br>Chief Judge William C. Griesbach |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX, INC., AND EQUIFAX INFORMATION SERVICES, LLC'S JOINT MOTION TO DISMISS THE COMPLAINT

### FACTS

Plaintiff filed his Complaint on January 2, 2019. [Doc. 1] On March 11, 2019 Defendants Equifax Inc, Equifax Information Services LLC, and Experian Information Solutions Inc. filed a Joint Motion to Dismiss under F.R.C.P. Rule 12(b)(6) his Complaint. [Doc. 17] Plaintiff made two very detailed and specific requests for his full consumer file disclosure under 15 U.S.C. § 1681g in an effort to obtain and review **all** information that Defendants in this action had in its files relating to him as a consumer. [Doc. 1 and Exhibits] The FCRA requires, among other obligations, that CRAs "clearly and accurately" disclose to a requesting consumer "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(l). Plaintiff did not ask for a "credit report," a credit score, risk score, predictors, or things relating to the processes and procedures of how Defendants create reports, or maintains, analyzes, or disseminates information relating to him to its customers. Plaintiff simply

1

requested a **full consumer file disclosure** of what Defendants had in their respective possession, in any form or in any place, that relates specifically to him. It was a very unambiguous and straight-forward request made under the law. In response to Plaintiff's multiple requests, Defendants provided what can be described as typical "credit reports." Plaintiff did NOT request a "credit report," but instead made a request for his **full consumer file disclosure** of all information contained in Defendants' files or is accessible by them. Plaintiff urges the Court to read Defendants responses with an eye for Defendants attempting to muddy the waters instead of being responsible for the plain language of the statute.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting Iqbal, 556 U.S. at 678). In applying this standard, the Court should accept all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos,* 890 F.3d 634, 646 (7th Cir. 2018). Only if no possible construction of the alleged facts will entitle

Plaintiff to relief should the court grant Defendant's motion. *Hishon v. King & Spalding*, 461 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to Plaintiff, a court finds that Plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964 (2007). A complaint will survive a motion under Fed. R. Civ. P. 12(b)(6) if it states plausible grounds for Plaintiff's entitlement to the relief sought, id. at 1965-66, i.e., it need merely contain sufficient factual allegations to raise a right to relief above the speculative level, id. at 1965. The issue before the Court upon consideration of such a motion is not whether Plaintiff "will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *McDowell v. N. Shore-Long Island Jewish Health* Sys., Inc., 839 F. Supp. 2d 562, 565 (E.D.N.Y. 2012) (citing to *Todd v. Exxon Corp.,* 275 F.3d 191, 198 (2d Cir.2001)). On a motion to dismiss under Rule 12(b)(6), "a complaint must be construed in the light most favorable to the plaintiff, the allegations thereof being taken as true, and, if it appears reasonably conceivable that at trial the plaintiff can establish a set of facts entitling him to some relief, the complaint should not be dismissed." *Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780, 783 (7th Cir. 1977). The issue is not whether a plaintiff will ultimately prevail, but whethe the claimant is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief. *Beanal v. Freeport McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999)

The Plaintiff is proceeding *pro se*, and all pleadings filed must be liberally construed. *Haines v Kerner,* 404 U.S. 519 (1972). The district court is to ensure that the claims of the *pro se* litigants are given "fair and meaningful consideration." *Matzker v. Herr*, 748 F.2d 1142, 1146 (7th Cir.1984)

3

As set forth in detail below, Plaintiff has met this standard of review, well within the meaning of the foregoing case law, thus warranting denial of Defendants' motions in their entirety.

## ARGUMENT AND AUTHORITIES

I.  **"The Complaint Fails to State a Plausible Claim for Relief"**

Plaintiffs Complaint should not be dismissed because it does indeed state a plausible cause of action under *Twombly*. A complaint is a notice pleading. In their Joint Motion, Defendants assert that Plaintiff must provide all evidence to prove his claims at the pleading stage, even without the benefit of discovery. Defendants argue that Plaintiff merely recites the words of the statute and states his claim in conclusory fashion and only makes conclusory allegations. Plaintiff, as clearly stated in his Complaint, made multiple very specific requests of each of the Defendants, and they each failed to comply with the requirements of 15 U.S.C. § 1681g(a)(l), which is the statutory basis of the claim made. Plaintiff is not required to state all facts and prove his case at the pleading stage. "Here, the Court is not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

II. **"The Complaint Does Not Allege Any Facts Supporting The Claim That Defendants Willfully Violated the FCRA"**

A. **"Under the FCRA, willfulness is a a high standard that requires knowing or reckless violation."**

Given the very high duty of care assigned by statue specifically to the Consumer Reporting Agencies to exercise their "grave responsibilities with fairness," (§ 1681g(a)(4) the Court should not view Defendant's excuses with a patient, passive, or casual eye.  Willfulness and recklessness are questions for the jury to determine.

4

With the Complaint and exhibits, Plaintiff has alleged that Defendants knew of their legal obligations but consciously refused to comply with § 1681g(a)(1). Despite the specific written requests sent to them by the Plaintiff, which apprised them of their duties, Defendants failed to perform their duties intentionally and purposefully, in conformity with their established and systemic policies and procedures. The allegations provide enough detail and fair notice of what Plaintiff will prove and gives Defendants more than the required "fair notice of what the claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). "An allegation that the defendant was aware of the FCRA, but failed to comply with its requirements, [is] sufficient to support an allegation of willfulness and to avoid dismissal." *Singleton v. Domino's Pizza, LLC*, 2012 WL 245965, *4 (D. Md. Jan 25, 2012) (citations omitted). See also *Kubas v. Standard Parking Corp IL*, 594 F.Supp.2d 1029, 1031-32 (N.D. Ill 2009), denying a motion to dismiss where plaintiff alleged that a defendant acted willfully by failing to comply with the FCRA's FACTA amendment after credit card issuers had informed it of the law's requirements. The Complaint describes Defendants obligation to comply with FCRA § 1681g(a)(1). The Complaint shows that they did not do so. The Defendant's Motion should be denied.

Plaintiff sincerely appreciates creative writing. However Defendants' peculiar attempt to parallel the FCRA's willfulness to qualified immunity of public officials is best shelved in the Fantasy aisle. Mindful of civil violations Rodney King famously asked, "Why can't we all just get along?" If billion dollar Defendants would follow the plain statutes instituted specifically to govern them, Plaintiff would not need to bring this Complaint.

**B. "Allegation do not rise to the level of a knowing or reckless violation because they do not allege a violation at all."**

A defendant acts willfully under the FCRA by either knowingly or recklessly disregarding its statutory duty. *Safeco,* 551 U.S. at 57-60. Relying upon this definition, courts have found assertions that a defendant repeatedly violated the FCRA sufficient to allege reckless - and, therefore, willful

5

misconduct. *See Smith v. HireRight Solutions, Inc.,* 711 F.Supp.2d 426, 435. The Complaint and exhibits illustrate the Plaintiff made two specific requests to each Defendant, in writing, via certified mail-return receipt, which emphasizes to any non-reckless business the importance of the requests made therein. How many bites of the apple is the public supposed to give?

Defendant disgorges a fair bit of toner to muddy the waters and wrongly assert that Plaintiff is referring to computer machine languages in his Complaint with reference to "negative codes." Plaintiff is not seeking internal record keeping mechanisms, such as at issue in *Gillespie*. It is unreasonable for Defendants to rely on *Gillespie*. To the contrary, Plaintiff makes a clear appeal the disclosure of **all** information in his consumer file, whether or not the CRAs happen to select it for inclusion in the "credit reports" provided to Plaintiff or sold to others. Defendants might end this litigation instantly if they could plausibly affirm to the Court that what they sent to Plaintiff in late 2017 was indeed the **entirety** of information they maintain on him, and that they neither store, maintain, nor sell **any other** information regarding the Plaintiff.

Congress clearly intended the protections of the FCRA to apply to all information furnished or that might be furnished in a consumer report. The court in *Gillespie* noted, " '[F]ile denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer." *Id. (quoting 16 C.F.R. Pt 600, app. 603). Cortez v. Trans Union*, LLC, 617 F.3d 688, 721 (3d Cir. 2010) What *Cortez* makes pellucid is that Consumer Reporting Agencies are required to disclose information in Plaintiff's "consumer file" which is **not** included in typical "consumer reports" or "credit reports" distributed to others.

Failing to provide a **full consumer file disclosure** under § 1681g(a)(1) is an entirely different violation than failing to provide a consumer credit report (such as the public most frequently requests). Withholding information stored on a individual is a willful violation of § 1681g(a)(1). *Goode v. LexisNexis Risk*, 848 F.Supp.2d 532 (2012). To elaborate, the *Goode* court found that not only is a

6

CRA relying on *Gillespie* objectively unreasonable, it rejected the conflation of "consumer reports" provided to others and the **full consumer file** held by the CRA. The Court held, "Congress clearly intended for § 1681g(a)(1) to request something more – all information in the consumer's file – than the report they automatically receive under § 1681b(b)(3)(A)."

Further, as in the unpublished *Scott* case cited by Defendants, this Plaintiff also has information provided to him by other consumer reporting agencies but which not included in the "credit reports" provided by Defendants. At this 'fair notice' stage of litigation, the Complaint plainly states that Defendants failed to provide all information available to the Defendants in his consumer file. In May 2017 Plaintiff received a report from the National Consumer Telecom & Utilities Exchange (NCTUE) which included information about his telephone service billing. The NCTUE states on its website that, "The NCTUE database is housed and managed by Equifax Information Services LLC."[1] The "credit report" supplied to Plaintiff by Defendants Equifax Inc. and Equifax Information Services LLC did not include Plaintiff's telephone billing history in their response to Plaintiff's request for his full consumer file disclosure. Equifax Defendants market a service called "FirstSearch" which boasts of,

> "fresh, new contact information on millions of consumers from various proprietary sources that are among the first to know when a consumer has moved or requested services for a physical address. What's more, you also get industry exclusive access to **current billing record and payment history data from within the utility, pay TV, and wireless communication sectors.**"[2] (Plaintiff adds emphasis.)

Plaintiff reasonably believes Equifax Defendants are describing their use of the NCTUE data, despite failing to include this NCTUE data when he asked for a **full consumer file disclosure**.

Equifax Defendants operate an employment verification service marketed as "The Work Number." The website of "The Work Number" is festooned with Equifax branding and states, "The Work Number

---

1 https://www.nctue.com/about-us (last accessed March 29, 2019)
2 https://assets.equifax.com/assets/usis/firstSearch_ps.pdf (last accessed Mar. 29, 2019)

is a registered trademark of TALX Corporation, a wholly owned subsidiary of Equifax Inc." [3] Plaintiff requested a report on himself from "The Work Number," and he received from "The Work Number" what appeared to be its standard report with some of his employment information. Despite requesting from Equifax Defendants a **full consumer file disclosure**, this employment information stored and accessible by them was not included in their response.

These individual, direct examples demonstrate that "credit reports" are mere selections of data held on consumers and certainly not all of the information available to the CRAs. Plaintiff's Complaint is "fair notice" of the nature of the allegations against Defendants. Defendants 12(b)(6) motion is premature. "However, such arguments [regarding what constitutes a consumer file], which require evidence not appropriate on a motion to dismiss, are more suitably determined on summary judgment or at trial." Jones v. Equifax, Inc., No. 3:14-cv-678, 2015 WL 5092514, at *4 n.11 (E.D. Va. Aug. 27, 2015).

### B. "Plaintiff lacks standing because the Complaint does not allege a concrete injury."

"'It is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded.' (citing *Blackstone's Commentaries*) ... The Government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation if the laws furnish no remedy for the violation of a vested legal right. " *Marbury v. Madison* 5 U.S. (1 Cranch) 137, 163 (1803)

Plaintiff alleges far more than a "bare procedural violation." By providing a private cause of action, Congress recognized the harm such violations of the FCRA cause, thereby articulating a "chain of causation that will give rise to a case or controversy." *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan v Defs. Of Wildlife*, 504 US 555, 580.)

---

3   https://www.theworknumber.com   (last accessed Mar. 29, 2019)

Courts have accepted that "an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a 'risk of real harm' to that concrete interest." *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016); see also *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 911 (7th Cir. 2017). "The violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact" and, in those circumstances, a plaintiff "need not allege any additional harm beyond the one Congress has identified." *Spokeo*, citing *FEC v. Akins*, 524 U.S. 11, 20-25 (1998); *Public Citizen v. U.S. Dept of Justice*, 491 U.S. 440, 449 (1989)).

By providing a private cause of action for violations [of the F.C.R.A.], Congress has recognized the harm such violations cause, thereby articulating a "chain of causation that will give rise to a case or controversy." *Syed v. M-I, LLC, No. 14-17186 (9th Cir. 2017)*

Facing a substantially similar FCRA § 1681g(a)(1) complaint, an Equifax motion to dismiss last year was defeated, with the Court concluding the Plaintiff had both sufficiently stated a claim and that findings of fact were still necessary. See *Hinkle v. Experian Information Solutions, Inc et al.*, No.1:18-CV-00007 - Doc. 56 Memorandum & Recommendation (W.D. North Carolina 2018).

Long before *Spokeo* expressly reaffirmed that informational injuries constitute a sufficient "injury in fact" for the purposes of standing, the doctrine of informational injury was already well established in Supreme Court precedent and the federal circuits. The Supreme Court and other circuit courts have uniformly held that a deprivation of information is a sufficient injury for standing purposes. These holdings have arisen in a wide variety of statutory contexts, from government-sunshine and election law to health, safety, and environmental regulation. See *Havens Realty Corp v. Coleman*, 455 U.S. 363, 373 (1982); *Doe v. Pub. Citizen*, 749 F.3d 246, 263 (4th Cir. 2014) (observing that "[t]he Supreme Court consistently has held that a plaintiff suffers an Article III injury when he is denied information that must be disclosed pursuant to a statute"); *Heartwood v. U.S. Forest Serv.*, 230 F.3d 947, 952 n.5

(7th Cir. 2000) (finding "cognizable injury-in fact" for plaintiffs who were deprived of information required to be disclosed by statute); *Pub. Citizen v. FTC*, 869 F.2d 1541, 1543 (D.C. Cir. 1989) (finding Article III standing where consumers were "not receiving the information in the manner in which they claimed they were legally entitled to receive it").

That is exactly what is described in the Complaint. Congress, through the FCRA, decided that consumer reporting agencies such as the Defendants must provide a full consumer file disclosure. Simple and plainly, individuals have the statutory right to know what is in the file. Plaintiff's "inability to obtain [that] information" is therefore "a sufficient injury in fact to satisfy Article III." *Spokeo*, 136 S. Ct. at 1549.

Defendants argument that Plaintiff has not suffered a concrete harm depends on a fatally flawed premise: that a consumer must suffer an *additional* harm beyond the deprivation of information. Plainly Defendants violations resulted in precisely the type of informational injury specifically recognized by the Supreme Court in *Spokeo* and other cases, such as *Havens*. 455 U.S. At 363.

*Havens* demonstrates the flaws with Trans Union's argument that Plaintiff must show how the deprivation of information impacted him. In *Havens*, the Supreme Court held that a housing-discrimination "tester" had standing based on a violation of "[his] statutorily created right to truthful housing information." *Id*. Although the tester had no "intention of buying or renting a home" and "fully expect[ed] that he would receive false information," *id*. at 373–374, the Court held that "[a] tester who has been the object of a misrepresentation made unlawful under [the statute] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing." *Id.*

Like the "tester" in Havens or the potential employee in Thomas, Plaintiff suffered the type of injury the FCRA "was intended to guard against." To hold otherwise would defy *Havens* and even *Spokeo*, which unquestionably recognized that the deprivation of information subject to disclosure under a federal statute "constitutes a sufficiently distinct injury to provide standing to sue." *Spokeo*,

10

136 S. Ct. at 1549 (citing *Public Citizen*, 491 U.S. at 449; *Akins*, 524 U.S. at 24-25 (1998))

The Supreme Court's landmark decision in *Safeco* is deductively instructive. In *Safeco*, the violation at issue was an insurer's failure to provide a consumer with notice that it had used information in a consumer report to increase the consumer's insurance rates in violation of §1681m(a). The Supreme Court's decision reached the merits of the issue, and thereby implicitly recognized that the informational injury at issue was sufficient to confer standing. If the deprivation of information was insufficient to confer standing then the Supreme Court would not have decided Safeco on the merits, as it would have had a duty to dismiss *sua sponte*.

"Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry." *Dalton*, 257 F.3d 409 at 414 (citing S. Rep. No. 91–517, at 3 (1969)). As one legislator remarked, "with the trend toward . . . the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal 'blips' and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable." 116 Cong. Rec. 36570 (1970). Thus, aware that "in too many instances [consumer reporting] agencies were reporting inaccurate information that was adversely affecting the ability of individuals to obtain employment . . . Congress adopted a variety of measures designed to insure that agencies report accurate information." *Id.* at 414–15. Among the chief concerns that Congress specifically recognized was consumers' lack of access to the information that consumer reporting agencies were automatically associating with consumers. See Senate Report at 3 (noting the "inability at times of the consumer to know he is being damaged"). Congress thus enacted § 1681g because in some cases it "may be the only way in which the consumer can effectively" correct mistakes. 116 Cong. Rec. 35,940 (1970). Indeed, *Spokeo* itself referenced the FCRA in describing the risk-of-harm principle, explaining that when Congress passed the statute it identified an important injury—"the dissemination of false information"—and "plainly sought to curb" the harm flowing from that injury

11

"by adopting procedures designed to decrease th[e] risk" of dissemination. 136 S. Ct. at 1550. Section 1681g(a) is the cornerstone provision of the FCRA that Congress designed to lower the prevalence of inaccurate information. Plaintiff's Complaint clearly describes an effort to protect his personal information, not redress of a general public right.

It is worth noting again how straightforward this case is under Justice Thomas's approach in *Spokeo*, 136 S. Ct. at 1550-54. As Justice Thomas explained, Article III does not require a "plaintiff seeking to vindicate a statutorily created private right" to "allege actual harm beyond the invasion of that private right." Id. at 1553 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982); *Tenn. Valley Elec. Power Co. v. TVA*, 306 U.S. 118, 137-38 (1939)). That is because "Congress can create new private rights and authorize private plaintiffs to sue based simply on the violation of those private rights." *Id.* Article III requires more, however, when the suit involves a **public** right. See *Id.* ("Congress cannot authorize private plaintiffs to enforce public rights in their own names, absent some showing that the plaintiff has suffered a concrete harm particular to him.") Plaintiff in this case is not creating a class and defending the **public's** right to **public** information; to the contrary he is plainly demanding full disclosure of his **own** full consumer file, a right specified by Congress for protection of individuals.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss should be denied in its entirety.


Respectfully submitted,

*[signature]*

Brian G. Heyer *pro se*
W6786 Sunnyvale Ln, Greenville, WI 54942-8695
(920) 710-0171   heyerstandards@gmail.com

12

## CERTIFICATE OF SERVICE

The undersigned certifies that a true cope of the foregoing was served on the following parties via First Class, U.S. Mail, postage prepaid, on March 30, 2019.

Marie G Bahoora
Michael Best & Friedrich LLP
100 E Wisconsin Ave - Ste 3300
Milwaukee, WI 53202-4108

Michelle L Dama
Michael Best & Friedrich LLP
Firstar Plaza
1 S Pinckney St - Ste 700
PO Box 1806
Madison, WI 53701-1806

J Robert Weyreter
Justin T Walton
Katherine E Carlton Robinson
Schuckit & Associates PC
4545 Northwestern Dr
Zionsville, IN 46077

Meryl W. Roper
King & Spalding LLP
1180 Peachtree Street NE
Atlanta, GA 30309

Dated March 30, 2019

_____
Brian G. Heyer