# EXHIBIT 3

2015 WL 5613203
Only the Westlaw citation is currently available.
United States District Court,
N.D. Indiana,
Fort Wayne Division.

Russell D. ROSCO, Plaintiff,
v.
EQUIFAX INFORMATION
SERVICES, INC., Defendant.

Cause No. 1:14–CV–141.
|
Signed Sept. 23, 2015.
|
Filed Sept. 24, 2015.

**Attorneys and Law Firms**

Russell D. Rosco, Brewster, WA, pro se.

Brian J. Olson, King & Spalding LLP, Atlanta, GA, James W. Riley, Jr., Riley Bennett & Egloff LLP, Indianapolis, IN, for Defendant.

## *ORDER*

RUDY LOZANO, District Judge.

**\*1** This matter is before the Court on the: (1) Report and Recommendation of Magistrate Judge Susan Collins, filed on September 4, 2015 (DE # 67); and (2) Report and Recommendation of Magistrate Judge Susan Collins, also filed on September 4, 2015 (DE # 68).

First, Magistrate Collins ruled upon Defendant's motion to enforce a settlement agreement (DE # 54), finding the parties had not reached an agreement, or a meeting of the minds, on at least one essential term, Plaintiff's receipt of his corrected "credit file," and denying the motion to enforce a settlement agreement. (DE # 67).

Second, Magistrate Collins ruled on three motions for sanctions by filed by pro se Plaintiff, Russell Rosco (DE ## 34, 53, 62), and found that the Court had not issued a discovery order with which Equifax had failed to comply, thus the motions for sanctions were denied. (DE # 68.)

More than 14 days have passed and no party has filed any objection to either Report and Recommendation. Fed.R.Civ.P. 72(b)(2); *see also* Willis v. Caterpillar, Inc., 199 F.3d 902, 904 (7th Cir.1999) (explaining that the failure to file a timely objection will result in the waiver of the right to challenge a report and recommendation). Therefore, the parties have waived their right to challenge the report and recommendations.

Therefore, the Court hereby **ADOPTS** the Report and Recommendation (DE # 67). Accordingly, Defendant's motion to enforce settlement (DE # 54) is **DENIED.**

Additionally, the court **ADOPTS** the second Report and Recommendation (DE # 68). Accordingly, Plaintiff's motions for sanctions (DE ## 34, 53, and 62) are **DENIED.**

### REPORT AND RECOMMENDATION

SUSAN COLLINS, United States Magistrate Judge.

Before the Court is Defendant Equifax's motion to enforce settlement (DE 54) in this case filed by *pro se* Plaintiff Russell D. Rosco under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* On August 3, 2015, District Judge Rudy Lozano entered an Order pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Northern District of Indiana Local Rule 72–1(b), referring this case to the undersigned Magistrate Judge to prepare a report and recommendation. (DE 63). For the following reasons, the undersigned Magistrate recommends that Equifax's motion to enforce settlement be DENIED.

### A. Factual and Procedural Background

On April 1, 2014, Rosco filed this action in Allen County Superior Court, Indiana, Small Claims Division, alleging that Equifax failed to provide him with information in his credit file upon request, in violation of § 1681g(a)(1) of the FCRA. (DE 13). Equifax removed the case to this Court. (DE 1). The Court conducted a scheduling conference on November 24, 2014, setting a discovery deadline of April 17, 2015. (DE 12).

**EXHIBIT 3**

On April 3, 2015, Rosco filed a "Motion for Sanction Against Equifax and Their Counselor for Willful Discovery Violations," seeking sanctions against Equifax on the basis that it purportedly responded to his discovery requests by making boilerplate objections. (DE 34). On April 20, 2015, Equifax requested an extension of time to respond to Rosco's motion for sanctions, which the Court granted. (DE 40; DE 42). The Court then received Rosco's objection to the requested extension; not long thereafter, Equifax filed a second request for extension of time to respond to Rosco's motion for sanctions. (DE 43; DE 44). On May 11, 2015, the Court held a hearing on Equifax's motion for a second extension, at which Rosco and Defendant's counsel, Brian J. Olson and James W. Riley, appeared telephonically. (DE 46).

**\*2** At the hearing, the Court heard oral argument from Rosco and Attorney Olson on the motion for extension.[1] Near the close of the hearing, Olson explained that when the parties were conferring regarding discovery issues and discussing potential settlement, he explored with Rosco the possibility that Equifax would provide his "consumer report" as part of the case resolution; Rosco, however, insisted that he wanted his "entire file." Olson stated that he would like to hear from Rosco what information in particular he is seeking. To provide the parties an opportunity to confer about their disputes and to explore the possibility of settlement, the Court then went off the record, leaving counsel and Rosco to confer among themselves. After 16 minutes, the parties notified the Court that they were ready to go back on the record. (DE 46).

When the hearing resumed, Attorney Olson gave the following report of the parties' conference: (1) he was happy to report that the parties had made "significant headway"; (2) Equifax had agreed to send Rosco, via overnight mail, "a copy of his credit file" so that he could review it "shoulder to shoulder" with Olson, because Rosco was concerned that his credit file may contain inaccurate information; (3) it may be necessary to reinvestigate the information in Rosco's file to verify any inaccuracies, and Equifax would be glad to work with Rosco on that; (4) Rosco was "concerned about settlement because he does not want to have to verify that the information on his file is accurate if, in fact, it is not," and Equifax agreed with that statement; (5) Rosco had made a monetary demand, which Olson agreed to take to Equifax that same day and "discuss potential settlement";

and (6) Rosco wanted assurance that the parties would not report to the Court that day that they had settled the case, "even if, in fact, Equifax settles"; Olson explained that such a report to the Court would not alleviate Equifax's obligation to complete the parties' settlement.

Rosco was silent throughout Olson's report of their off-the-record conference. The Court acknowledged that it sounded as if the parties were "heading toward a resolution that could be beneficial for both parties," and the Court then reviewed the deadlines set for Rosco's deposition and Equifax's response to Rosco's motion for sanctions. Before closing the hearing, the Court asked the parties if they had anything further; neither Olson, Riley, or Rosco indicated that they did.

Three days after the hearing, on May 14, 2015, Olson sent Rosco the following email, in relevant part:

> Equifax has agreed to accept your offer of settlement on the terms that we reported to the Court on Monday. Equifax will send you a settlement check for $[XXX] in exchange for dismissal with prejudice. I will send you the settlement agreement, w–9, and disclosure for your review. Please sign the settlement agreement and w–9 and I will order the check. Once I receive it I will send it to you by overnight mail.

**\*3** (DE 54–1 at 3). Later that day, Olson received the following response from Rosco:

> Th[e] agreement also included having a correct credit file. I am not nor have I agreed to signi[ ]ng anything until I have an accurate credit file.
>
> We still need to work on getting the credit file reviewed and corrected before any settlement agreement is sent to me.
>
> You still have to answer my sanctions motion by Monday. [ ] I did not [ ] agree to any quick settlement or the waiving any activity pending in the court. I have and will continue to demand to see my credit file.

> The $[XXX] settlement was and is condition[ed] on seeing my credit file and having it corrected.

(DE 54–1 at 4).

One week later, on May 18, 2015, Equifax filed a motion to stay, asking the Court to stay all proceedings for 45 days "while the parties complete the remaining terms of settlement and file a stipulation of dismissal." (DE 47 ¶ 4). Equifax stated that Olson had "sent an email to [Rosco] confirming that Equifax accepted the settlement offer on the terms outlined to the Court and for the monetary amount discussed by the parties." (DE 47 ¶ 2). Equifax further indicated that "[a]s a term of settlement Equifax has agreed to provide [Rosco] with a credit disclosure and to assist [him] with any disputed information," which would take time to complete. (DE 47 ¶ 3). On that same day, Equifax sent Rosco the "disclosure" for his review. (DE 54 at 2; DE 54–1 ¶ 7).

On May 26, 2015, Rosco objected to Equifax's motion to stay, agreeing that "some progress was made on terms of settlement," but that they were still "a long way from settling." (DE 50 at 1–2). He stated that any settlement would have to give him what he initially demanded—his "credit FILE"—in addition to automatic monetary sanctions against Equifax for reporting any inaccurate data and provision for punitive damages in any future lawsuit. (DE 50 at 1 (capitalization in original)).

On June 11, 2015, Rosco filed a document entitled "Notice of No Settlement Agreement," stating: (1) that he had "no desire to enter into a settlement agreement"; and (2) that Equifax "failed to provide the credit file" and instead "only provided a disclosure form which is at best a snapshot of currently reported accounts; not all account records held by [Equifax] over the course of the last two to seven years." (DE 52 at 1). Rosco asserted that the documents he received constituted only a "part" of his credit file, and that Equifax's failure to provide the entire contents of his credit file "is the primary reason that the settlement is off; if it [had] ever been in the works." (DE 52 at 1).

On June 26, 2015, Equifax filed the instant motion in response to Rosco's notice, asking the Court to enforce the settlement agreement and dismiss this case. (DE 54). Rosco filed a response on July 6, 2015, asserting that there was never an agreement about the settlement terms, in writing or otherwise. (DE 57 at 2). He acknowledges that "some progress has been made on terms of settlement," but contends that Equifax's offer to provide "assistance with disputed items" is a far cry from his stated demand of receiving a correct "credit file," which he urges is *not* the same thing as a "consumer disclosure." (DE 57 at 4, 8, 10). As such, he asserts that there was no meeting of the minds regarding the settlement terms. (DE 57 at 8).

### B. Applicable Legal Standard

**\*4** "A settlement agreement ... is enforced just like any other contract." Lynch, Inc. v. SamataMason, Inc., 279 F.3d 487, 489 (7th Cir.2002) (citations omitted). "Issues regarding the formation, construction, and enforceability of a settlement agreement are governed by local contract law." Pohl v. United Airlines, Inc., 213 F.3d 336, 338 (7th Cir.2000) (citation omitted). Under Indiana law, which governs here, an agreement to settle a lawsuit is generally enforceable. Zimmerman v. McColley, 826 N.E.2d 71, 76–80 (Ind.Ct.App.2005) (enforcing an oral settlement agreement in personal injury case). A settlement agreement need not be in writing to be enforceable. Id. at 77 n. 2 (citing Vernon v. Acton, 732 N.E.2d 805, 809 (Ind.2000)). "Settlement agreements are governed by the same general principles of contract law as any other agreement"; they require "[a]n offer, acceptance, [and] consideration." Id. at 76 (citations omitted).

"A meeting of the minds of the contracting parties, having the same intent, is essential to the formation of a contract." Id. at 77 (citing Wallem v. CLS Indus., Inc., 725 N.E.2d 880, 883 (Ind.Ct.App.2000)). "The failure to demonstrate agreement on essential terms of a purported contract negates mutual assent and hence there is no contract." Ochoa v. Ford, 641 N.E.2d 1042, 1044 (Ind.Ct.App.1994) (citation omitted); *see also* Schuler v. Graf, 862 N.E.2d 708, 715 (Ind.Ct.App.2007) ("If a party cannot demonstrate agreement on one essential term of the contract, then there is no mutual assent and no contract is formed." (citation omitted)). Whether a meeting of the minds exists "is a factual matter to be determined from all the circumstances," and the Court should not consider "the parties' subjective intents but their outward manifestation of it." Zimmerman, 826 N.E.2d at 77 (citations omitted).

### C. Discussion

Contrary to Equifax's assertion, the circumstances surrounding the May 11th hearing are more reflective of settlement negotiations, than an actual settlement agreement. *See id.* (stating that whether a meeting of the minds exists "is a factual matter to be determined from all the circumstances" (citation omitted)). When Attorney Olson reported about the parties' off-the-record conference, he stated that they had made "significant headway," *not* that they had, in fact, settled. Similarly, he indicated that he would take Rosco's monetary demand to Equifax and "discuss potential settlement." Olson also conveyed Rosco's concern that he did not want the Court to report that the case had, in fact, settled. After hearing Olson's report, the Court stated that it sounded as if the parties "were heading toward a resolution." As explained earlier, Rosco remained silent throughout this portion of the hearing.

"Indiana law recognizes that two parties may reach an oral, binding settlement agreement." *Pohl v. United Airlines,* 110 F.Supp.2d 829, 837 (S.D.Ind.1999) (citations omitted). "If one party transmit[s] a clear and unambiguous settlement offer which [is] accepted by the [other party] ... the parties [have] reached a binding settlement agreement." *Id.* (alterations in original) (citations omitted). Here, however, Equifax has not demonstrated that Rosco made a clear and unambiguous *offer* of settlement to Equifax at the hearing, despite Olson's May 14th email to Rosco attempting to characterize it as such. (DE 54–1 at 3 ("Equifax has agreed to accept your offer of settlement on the terms that we reported to the Court on Monday.")). Nor has Equifax shown that Rosco *accepted* a clear and unambiguous offer of settlement from Equifax at the hearing.

**\*5** And after the hearing, Rosco's email exchange with Olson makes it very clear that Rosco did not later accept Equifax's offer of settlement, as Rosco stated: "I am not nor have I agreed to signi[ ]ng anything until I have an accurate credit file." (DE 54–1 at 4); *see, e.g., Gaul v. Chrysler Fin. Servs. Ams., LLC,* No. 1:13–cv–433, 2014 WL 1466491, at \*4 (N.D.N.Y. Apr.15, 2014) (stating in a FCRA case against this same Defendant: "The Plaintiffs have never affirmed, either orally or in writing, that they accept the terms of a settlement. Instead, Defendant presents evidence of the negotiations that were intended to lead to the settlement...."). Therefore, Equifax has failed to establish the elements of offer and acceptance necessary to form a settlement agreement.

Moreover, "[d]istrict courts may only enforce completed settlement agreements—those which the parties have reached agreement on all material terms." *Hyde Park Union Church v. Curry,* 942 F.Supp. 360, 363 (N.D.Ill.1996) (citation omitted). Here, there was no "meeting of the minds" on at least one essential term —Rosco's receipt of his corrected "credit file." *See Zimmerman,* 826 N.E.2d at 77 ("A meeting of the minds of the contract parties, having the same intent, is essential to the formation of a contract." (citing *Wallem,* 725 N.E.2d at 883). "If a party cannot demonstrate agreement on one essential term of the contract, then there is no mutual assent and no contract is formed." *Schuler,* 862 N.E.2d at 715 (citation omitted).

Rosco contends that his "credit file" includes all account records held by Equifax over the last two to seven years, information about who had made inquiries during the two-year period prior to filing this lawsuit, any documentation regarding investigation of his disputes, any document listed in the supplemental response, and "other fields in the Metro and Metro2." (DE 52). He states that Equifax sent him only a "consumer disclosure," not his "credit file." (*See* DE 52; DE 54–1 ¶ 7). Equifax, however, contends that a "consumer disclosure" contains all the information in a credit file (DE 54 at 2; DE 54–1 at 2, 5), and that Rosco cannot now back out of the settlement agreement by assigning an "illogical and imaginary definition" to the term "credit file" (DE 64 at 5).

By the May 11th hearing, however, Equifax was already aware from Rosco's prior filings that Rosco was adopting a broad interpretation of the term "credit file." In several filings on April 3, 2015 (DE 34 at 7; DE 35 at 6–7, 16; DE 36 at 5, 10–11), Rosco cited a case, *Goode v. LexisNex Risk & Information Analytics Group, Inc.,* which construed a credit "file" as "all of the information on [a] consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 848 F.Supp.2d 532, 545 (E.D.Pa.2012) (alteration in original) (citing 15 U.S.C § 1681g(a)(1)). In contrast, Equifax seems to be relying on the narrower interpretation of "file" adopted by the Seventh Circuit Court of Appeals in *Gillispie v. Trans Union Corp.,* 482 F.3d 907 (7th Cir.2007),

which, of course, is binding authority on this Court. In *Gillispie,* the Seventh Circuit stated: "The language of § 1681g(a)(1), the FTC's interpretive guideline, and the Senate Committee Report all support [the] argument that 'file' means information included in a consumer report." *Id.* at 910.

**\*6** In fact, at the hearing, Olson referenced the parties' different views on this issue prior to their off-the-record conference, stating that he would like to hear from Rosco what information in particular he was seeking in requesting his credit file. (DE 46). Although Olson used the term "credit file" in his on-the-record report to the Court, he states that he sent a "consumer disclosure" to Rosco, which he contends contains all the information in Rosco's credit file. (DE 54–1 ¶¶ 7, 9). Rosco, however, made it clear in his May 14th email to Olson that any settlement was conditioned on his receiving a "correct credit file." (DE 54–1 at 4 ("I am not nor have I agreed to signi[ ]ng anything until I have an accurate credit file.")).

To reiterate, "[i]f a party cannot demonstrate agreement on one essential term of the contract, then there is no mutual assent and no contract is formed." *Schuler, 862 N.E.2d at 715* (citation omitted). Here, Equifax has not demonstrated that it reached an agreement with Rosco on the meaning of the term "credit file." In fact, by all outward manifestation in their actions, it is clear that the parties did *not* have a "meeting of the minds" on this term that would allow them to enter into an enforceable settlement agreement. *Zimmerman, 826 N.E.2d at 77*. Therefore, the undersigned Magistrate Judge will recommend that Equifax's motion to enforce settlement be denied.

### D. Conclusion

For the foregoing reasons, the undersigned Magistrate Judge recommends that Equifax's motion to enforce settlement (DE 54) be DENIED.

The Clerk is directed to send a copy of this Report and Recommendation to *pro se* Plaintiff Russell D. Rosco and Equifax's counsel. NOTICE IS HEREBY GIVEN that within 14 days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings or recommendations. Fed.R.Civ.P. 72(b)(2). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER. *See Brokaw v. Brokaw,* 128 F. App'x 527, 530 (7th Cir.2005); *Lorentzen v. Anderson Pest Control,* 64 F.3d 327, 330 (7th Cir.1995).

SO ORDERED.

Entered this 4th day of September 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 5613203

---

Footnotes

1     At the outset of the hearing, Attorney Olson reviewed the history of this case, acknowledging that Rosco seeks $3,500 in statutory damages in his complaint. Olson explained that early on in the matter, Rosco had contacted Olson regarding a potential settlement, and Equifax responded with a $500 settlement offer; Rosco, however, eventually rejected that offer.

---

**End of Document**      © 2019 Thomson Reuters. No claim to original U.S. Government Works.